Michael R. Berube, Pro Se
P.O. Box 356
Carmel Valley, CA 93924
michaelberube@yahoo.com

Tel. (831) 392-7975



FILED
FEB 16 2011
CLERK
United States Bankruptcy Court
San Jose, California

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.: 09-54715-ASW-11 |
| **MICHAEL R. BERUBE,** | Chapter 11 |
| | **OBJECTION TO CLAIM** |
| Debtor. | |
| | Date: |
| | Time: |
| | Place: U.S. Bankruptcy Court |
| | Courtroom 3020 |
| | 280 S. 1st Street |
| | San Jose, CA |

## DEBTOR'S OBJECTION TO CLAIM NUMBER 1

## THE AMENDED CLAIM OF CHASE HOME FINANCE, LLC,

## AS SERVICING AGENT TO US BANK, NATIONAL ASSOCIATION

## AS TRUSTEE FOR JPM-ALT 2007-A2

COMES NOW, MICHAEL R. BERUBE ("Debtor"), and files this Objection to Proof of Claim #1 as filed by the alleged Creditor, CHASE HOME FINANCE, LLC, AS SERVICING AGENT TO US BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR JPM-ALT 2007-A2 (hereafter, "CHASE") pursuant to Bankruptcy Rule 3007 and states the following:

A security interest in the property of the debtor is claimed; however, the proof of claim is accompanied by incompetent and inconsistent evidence that fails to support the claim that CHASE has authority to bring the claim, has standing or that the security interest has been perfected as required under F.R.B.P. Rule 3001(d) and is facially defective and does not constitute prima facie validity of the claim.

The proof of claim does not set forth CHASE's claim with proper specificity, pursuant to F.R.B.P. Rules 3001(a) & 3001(c).

WHEREFORE the Debtor objects to Claim #1 as filed by CHASE and respectfully requests this Court enter an order requiring CHASE to file an amended claim to correct the defect(s) within 30 days and if not corrected, upon expiration of that time, the claim be disallowed in its entirety.**I**

## MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM #1

### A.    FACTS

CHASE filed an Amended Proof of Claim and in support thereof, attached an Adjustable Rate Note and Deed of Trust. The Adjustable Rate Note states that the originator of the loan, the Lender, is "ALLIANCE BANCORP, A CALIFORNIA CORPORATION" (hereafter, "ALLIANCE") (See CHASE's Amended Proof of Claim, Adjustable Rate Note, para. 1). The note was executed on January 19, 2007 (Adjustable Rate Note, caption). The Deed of Trust, like the note, also states that the Lender is ALLIANCE (See CHASE's Amended Proof of Claim, Deed of Trust, para. (C)). And, the Deed of Trust states MERS is the beneficiary of the Deed of Trust (MERS = "Mortgage Electronic Registration Systems, Inc.". (Deed of Trust, para. (E)).

As to the Deed of Trust, CHASE attached not one, but two Assignments of Deed of Trust which purport to assign "all beneficial interest under that certain Deed of Trust...together with the Promissory Note secured by said Deed of Trust" to US Bank, National Association as Trustee for JPM ALT 2007-A2. The assignments were executed by MERS "Certifying Officers" Robert Bourne on 12-3-07 and by Chet Sconyers on December 20, 2007, while both assignments bear the date 10/23/2007 alongside the signature block.

Both assignments are facially defective and can not be valid for several reasons. First, MERS never had any interest in the Promissory Note executed by the Debtor in favor of Lender ALLIANCE BANCORP, and, therefore lacked capacity/authority to make any assignment of the note. ALLIANCE filed a Chapter 7 bankruptcy petition in the US Bankruptcy Court District of Delaware on July 13, 2007, case #07-10942-CSS. Lack of authorization from that Court permitting MERS or any other party to divest the interests of the ALLIANCE BANCORP estate by making post-petition assignments to US BANK constitutes a stay violation under 11 U.S.C. 362(a)(4)-(5) and is void under *In re Schwartz*, 954 F.2d 569 (9th Cir.1992) US BANK acting as trustee of a securitized trust could not legally take an assignment on either of those dates noted above as it violates the provisions of the trust agreement, an IRS REMIC known as a "Pooling and Servicing Agreement" (hereafter, PSA) which is publicly available on the United States Securities and Exchange Commission website identified to Debtor by CHASE attorney Steven M. Lawrence via e-mail on June 15, 2010, as:

**http://www.sec.gov/Archives/edgar/data/1400186/000116231807000671/psa.htm** A true and correct copy of said e-mail is attached hereto and incorporated by reference as Exhibit I.

The following provisions of the PSA which are referenced can be found by logging on to the website noted above.

The PSA identifies the Seller as "J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation." (hereafter, "JPMMAC"), the Depositor is identified as "J.P. Morgan Acceptance Corporation I, a Delaware corporation" (hereafter, "JPMACI") and the Trustee is "U.S. Bank National Association" (hereafter, "US BANK") (PSA, Article I, Definitions) The Preliminary Statement and the Article I Definitions section both indicate that on or before the Closing Date of May 31, 2007, that the Seller is to sell and transfer all the mortgage loans to the Depositor, and that on the Closing Date of May 31, 2007, the Depositor is to sell and transfer all the mortgage loans to the Trust.

Article II, Section 2.01(a)(i) of the PSA provides that "with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable);".

Article II, Section 2.03(a)(x) provides that "None of the Mortgage Loans have any marks or notations indicating that such Mortgage Loans have been pledged, assigned or otherwise conveyed to any Person other than the Trustee;". The Adjustable Rate Note attached to the amended Proof of Claim #1 (sworn to be a true copy of the original by CHASE counsel in its stay relief motion) contains endorsements to Persons other than the Trustee, and more importantly, to entities outside the chain of title that are neither the Seller nor the Depositor as identified in the PSA. Given those facts, even if US Bank were the owner and holder of the Adjustable Rate Note attached to the CHASE amended Proof of Claim #1, it is not a "holder in due course" with the right to enforce its terms. CHASE counsel filed a declaration in its stay relief motion that it was in possession of the original "wet ink" note and that a true and correct copy of said note was filed with that motion, however, counsel proffered no authentication of, nor made any mention of the "Allonge" filed therewith. The Allonge appears to be "free floating" and unaffixed to the note for its lack of any staple hole or hole punch markings readily visible on each and every other page of the alleged "true copy" Adjustable Rate Note.

The Debtor has filed with this Court a certified copy of a deposition of Angela Nolan whose "signature" appears on the Allonge. In that deposition Angela Nolan acknowledged that her signature is routinely applied to allonges *digitally* by other persons without her knowledge. In light of the recent media coverage surrounding a practice now commonly known as "robo-signing", along with Ms. Nolan's stark admissions regarding her digital signature being applied to allonges by other persons, Debtor asserts that the apparently unaffixed allonge is inadmissible.

If the allonge is in fact inadmissible, it leaves a note purportedly endorsed by the original Lender ALLIANCE BANCORP to *J.P. Morgan Chase Bank, N.A.,* a complete and total stranger to these proceedings. Assuming *arguendo* that CHASE's proffered Adjustable Rate Mortgage and Allonge are true and correct copies of the original promissory note, it would only prove US BANK is not a holder in due course due to the noncompliance with the strict provisions of the PSA governing the Trust. Taken together with the unauthorized post ALLIANCE BANCORP bankruptcy assignment(s) of the Deed of Trust (executed 6 months after the trust Closing Date) CHASE cannot prove its claim.

1        Chase Home Finance, LLC, filed its initial Proof of Claim #1 and subsequent amended

2 Proof of Claim #1 without a power of attorney to act on behalf of US BANK. The record is

3 absent anything that would establish any agency relationship between those entities.

4        Noncompliance with the PSA (as to the requisite timing and endorsement requirements

5 of any purported conveyance of Debtor's mortgage loan to the Trust) renders any agency status

6 CHASE might claim under the PSA unavailable.

7 **II**

8 **ARGUMENT**

9 ***CHASE has failed to produce competent evidence that it has standing.***

10

11 **A.**      <u>**Only a Real Party In Interest Has Standing**</u>

12        The standing doctrine "involves both constitutional limitations on federal court

13 jurisdiction and prudential limitations on its exercise." <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 128-

14 29, 125 S. Ct. 564, 160 L. Ed 2d 519 (2004) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S.

15 Ct. 2197, 45 L. Ed. 2d 343 (1975)). Constitutional standing under Article III requires, at a

16 minimum, that a party must have suffered some actual or threatened injury as a result of the

17 defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be

18 redressed by a favorable decision. (<u>Valley Forge Christian Coll. v. Am. United for Separation of</u>

19 <u>Church and State</u>, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 700 (1982)(citations and internal

20 quotations omitted)). Beyond Article III requirements of injury in fact, causation, and

21 redressiblity, the creditor must also have prudential standing, which is a judicially-created set of

22 principles that places limits on the class of persons who may invoke the court's powers. (<u>Warth</u>

23 <u>v. Seldin</u>, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). As a prudential matter, a

24 plaintiff must assert "his own legal interests as the real party in interest". (<u>Dunmore v. United</u>

25 <u>States</u>, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. Civ. P. 17, which provides"[a]n

26 action must be prosecuted in the name of the real party in interest.")

27 ///

28

**B.** **CHASE Produced Evidence That It Does Not Have Standing**

In the case of In re Kang Jin Hwang, 393 B.R. 701, 712 (D.D. Cal. 2008), the Court stated that a loan servicer cannot bring an action without the holder of the promissory note. In Carpenter v. Longan, 83 U.S. 271, 274 (1872), the Supreme Court stated that for there to be a valid assignment, there must be more that just an assignment of the deed alone; the note must also be assigned, stating that "[t]he note and mortgage are inseparable; the former as an essential, the latter as an incident"; adding that"[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity". In the case of In re Leisure Time Sports, Inc., 194 B.R. 859, 861 (9ᵗʰ Cir. 1996) the Court stated that "[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures" and that, "[i]f the debt is not transferred, neither is the security interest"); In the case of Kelley v. Upshaw, 39 Cal. 2D 179, 192 (1952) the Court stated that assigning only the deed without a transfer of the promissory note is completely ineffective.

The note and mortgage have to rest in the same entity to be enforceable. Assuming *arguendo* that one of the assignments of the Deed of Trust is valid (even though ALLIANCE BANCORP was (and *is*) involved with Chapter 7 bankruptcy proceedings when the assignments were made there is still no evidence that the Adjustable Rate Note has been transferred to US BANK.

This case is similar to the case of In The Matter of John T. Kemp Debtor v. Countrywide Home Loans, Inc., Case No. 08-18700-JHW, Adversary No. 08-2448 (Bankr.N.J., 2010), where the pooling and servicing agreement required certain endorsements on the note, but the note did not carry those endorsements. The Court found that Countrywide had no right to enforce the note. The Court stated:

> On behalf of the Bank of New York, Countrywide contends that the written mortgage assignment in this case, which purports to assign both the note and mortgage in this case, and which was properly executed and recorded with the appropriate county clerk's office, serves to properly transfer the note to the new owner, enabling the new owner to enforce

both the note and the mortgage. The recorded assignment of mortgage does include provision for the assignment of the note as well. However, the recorded assignment of the mortgage does not establish the enforceability of the note. As discussed above, the UCC governs the transfer of a promissory note. See 29 Myron C. Weinstin, New Jersey Practice, Law of Mortgages, Section 11.2 at 749. The attempted assignment of the note in the assignment of mortgage document, together with the terms of the Pooling and Servicing Agreement, created an ownership issue, but did not transfer the right to enforce the note.

> The right to enforce an instrument and ownership of the instrument are two different concepts...Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y. (At pages 19 and 20)

C.    **The "Assignment of Note" from the Originator ALLIANCE BANCORP to JP MORGAN CHASE BANK, N.A. to CHASE HOME FINANCE, LLC, failed for violation of the PSA and IRS Codes.**

The PSA describes itself as an IRS approved REMIC, which is a tax pass-through conduit. (PSA Preliminary Statement) The PSA specifies that the mortgage note must be endorsed with an unbroken chain of endorsements from the Originator all the way to the Trustee on or before the Cut-Off date of May 1, 2007. (PSA, Article I, Definitions; Article II, section 2.01(a)(i)).

The endorsements that must be on the note are as follows:

| **Originator** | to | **Seller** | to | **Depositor** | to | **Trustee** |
|---|---|---|---|---|---|---|
| ALLIANCE | | JPMMAC | | JPMACI | | US BANK |

The Closing Date for this REMIC trust was May 31, 2007. (PSA, Article I, Definitions) The closing date is also known as the start-up date of each Trust REMIC within the meaning of Section 860G(a)(9) of the IRS Code. REMIC laws prohibit the transfer of a note into a REMIC Trust more than 90 days after the closing date, with an exception of a "qualified replacement note" if within two years of the closing date. (IRC section 860G(a)(3)(A)(i)-(ii)(2006). If a mortgage loan is contributed after the three month window, it must qualify as a "qualified replacement mortgage". (IRC 860G(a)(4)(A)-(B)(2006)). A "qualified replacement" must be traded for a defective obligation and may not be conducted more than two years after the start-up date. (26 U.S.C. 860G(a)(4)(B)(ii)(2006)).[1] Sections 2.01 through and including 2.04 of the PSA provides that on or before the closing date the Trustee had to receive the original Note with its full chain of endorsements. The Trustee could not accept any mortgage loan after the start-up date other than a Qualified Substitute Mortgage Loan. Because the necessary endorsements are lacking, this note was never transferred into the REMIC trust. Because the IRS code prohibits transfers of notes into a REMIC more than 90 days after the Closing Date, and because there is no evidence from CHASE that this note was a qualified replacement mortgage, this note can not be held by the Trustee, regardless of any endorsements or assignments.

There is no evidence in the record proving that Debtor's mortgage loan was properly and timely or *ever*, for that matter, transferred into any pool of assets held by the Trust.

---

[1] The IRS imposes a 100% tax on net income derived from prohibited transactions. (26 U..S.C. 860F(a)(1)) If it is found that 1% of the notes in this REMIC did not exist within the REMIC rules, this REMIC will fail to qualify as an IRS Tax Pass-Through conduit and the Trustee would likely owe the IRS hundreds of millions of dollars in back taxes. The IRS now has a whistle blower statute where anyone who reports to the IRS that an entity has unpaid taxes can recover a 15% - 30% finders fee of the recovered tax if two million dollars or more is owed. A whistleblower may be anyone, even one who is unrelated to a cause. (26 U.S.C. 7623)

**D.    The "Allonge" Carries Strong Indicia of Fraud**

The Allonge included with the Adjustable Rate Loan note attached to CHASE's amended Proof of Claim #1 bears no staple or hole-punch markings which are clearly visible on each and every other page of that exhibit. Not being firmly affixed at the time of the purported negotiation and transfer of the note to the Trust, the transfer did not give US BANK holder status under New York UCC Section 3-202(2), nor did it perfect any security interest under New York trust law.[2]

The Allonge included with the Adjustable Rate Loan note attached to CHASE's amended Proof of Claim #1 contains endorsements to and from entities *outside* the chain of title described in the PSA. The allonge lacks any endorsements to or from the Seller, to or from the Depositor, or to the Trustee. What rights, if *any,* were transferred under New York UCC Section 3-201?

The Allonge is also suspect due to the sworn testimony given by Angela Nolan contained in her deposition, a certified copy of which Debtor has filed with his previous opposition to CHASE's stay relief motion. Angela Nolan testified that her signature is applied to allonges digitally by persons other than herself without her knowledge and/or review.

The Allonge purports to transfer the note "without recourse this 4/16/2007" (however, the record contains no evidence  to support when the allonge was created) from JP Morgan Chase Bank, N.A. to Chase Home Finance, LLC. The Allonge has not been authenticated as to make it admissible under Federal Rule of Evidence 901. It is not clear how JP Morgan Chase Bank, N.A. would have obtained title to the note under the provisions of the PSA as it is not the Seller, nor is it the Depositor. JP Morgan Chase Bank, N.A. is identified as one of the initial *Custodians. (*PSA, Article I, Definitions) As Custodian, JP Morgan Chase Bank, N.A. would be required to deliver a Custodian Certification such as that found in Exhibit L-2 of the PSA.

Additionally, section 12.06 of the PSA provides that the laws of the State of New York shall provide the governing law for the PSA, and that the obligations, rights, and remedies of the parties thereunder shall be determined in accordance with such laws. New York law provides that *any transfers beyond the stated powers of the trust are void.* "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance, or other act of the trustee in

---

2  Debtor's rationale is supported in a published article entitled "Getting Attached,", New York Law Journal, Monday, November 27, 2006, a true and correct copy is attached hereto  as Exhibit II.

contravention of the trust, except as authorized by this article and by any other provision of law, is void." <u>McKinney's Consolidated Law of New York Annotated Estates Powers and Trust Laws,</u> section 7-2.4 (2003); see <u>Allison & Ver Valen Co. v. McNee,</u> 9 N.Y.S. 2D 708 (N.Y. Sur. 1939). Because the PSA provides that the Trustee cannot accept any mortgage loan after the closing date (except for certain substitute mortgage loans which replace deleted mortgage loans) and because this note lacks all necessary endorsements, and instead bears endorsements to and from parties not provided for by the PSA, this note is not now held by the Trustee, regardless of any endorsements or assignments.

**E.**     **<u>CHASE's Response to Debtor's Qualified Written Request under RESPA Identifies Wells Fargo Bank, N.A. as Investor</u>**

In its response dated more than 6 months after Debtor's initial inquiry in the form of a Qualified Written Request under RESPA, purported loan servicer Chase Home Finance, LLC stated: "The investor on this account is Wells Fargo Bank, N.A." If true, CHASE's Proof of Claim fails again, or worse. If Wells Fargo Bank, N.A. is in fact the real party in interest, then are the copies of the note and allonge, trust deed assignments and declarations nothing more than fabrications intended to deceive and defraud this Court and the Debtor?

Debtor has previously filed a copy of his Qualified Written Request made to purported loan servicer Chase Home Finance, LLC. A true and correct copy of the above referenced letter in response dated July 9, 2010 is attached as Exhibit III..

### III
### <u>CONCLUSION</u>

CHASE's evidence demonstrates that it does not have standing, and it's proof of claim is not supported by any competent evidence. The evidence it does provide-a copy of the Adjustable Rate Loan and Allonge-do not contain the required endorsements according to the PSA identified by CHASE counsel. Instead the note and allonge have endorsements to and from the document custodian and loan servicer although no such provisions are found in the PSA.

1  US Bank, as trustee of an IRS REMIC, must conform its actions not only to the dictates of the

2  IRS Code, but also to the PSA because that document is regulated by New York law which

3  states that the Trustee has no powers outside of the trust document.  And, since both the PSA and

4  the IRS Code provide that the trust could not take a note more than 90 days after the closing

5  date(the exception being the qualified replacement note, but CHASE offered no evidence that

6  this was such a note), this note was never transferred into the trust because the PSA required a

7  full chain of endorsements on the note, which don't exist, and because the Allonge carries strong

8  indicia of fraud.

9        The allonge appears to be unaffixed to the note and if so, would render any purported

10  transfer to the the Trust invalid under New York UCC 3-202(2) and *Pribus v. Bush*, 118 Cal.

11  App. 3D 1003 (1981) and the Trust would not be a "holder" at all under these circumstances.

12        Both trust deed assignments were made after ALLIANCE BANCORP filed for Chapter 7

13  bankruptcy in US Bankruptcy Court District of Delaware, Case No.07-10942-CSS on July 13,

14  2007.  Absent that Court's authorization to make such transfers those assignments  violated the

15  automatic stay under 11 U.S.C. 362(a)(4)-(5) and are void under the *In re Schwartz* rational.

16        CHASE's response to Debtor's Qualified Written Request identifies yet *another* possible

17  creditor, namely **Wells Fargo Bank, N.A.**, and further undermines its claim.  Surely, this Court

18  can not know who the real party in interest is, if CHASE is utterly unsure themselves.

19        This is the Debtor's second challenge to the standing of CHASE.  CHASE has again

20  failed to demonstrate that it has standing.  Wherefore, Debtor respectfully requests this Court

21  deny CHASE its proof of claim.

22

23  February 14, 2011            _MRBerube_____

24                              Michael R. Berube, Debtor

25

26

27

28

# EXHIBIT LIST

Exhibit I           Mr. Lawrence Email with reference to PSA

Exhibit II         New York Law Journal Article

Exhibit III        Chase Response to Debtor's Qualified Written Request

# Exhibit I

 **MAIL** Classic

| **In re Berube [PSA Document]** | Tuesday, June 15, 2010 2:33 PM |
|---|---|
| **From:** "Steven M. Lawrence" <slawrence@alvaradoca.com> | |
| **To:** "Michael Berube" <michaelberube@yahoo.com> | |

Per the Court's instructions, please see attached link to retrieve the PSA document itself:

http://www.sec.gov/Archives/edgar/data/1400186/000116231807000671/psa.htm

Steven M. Lawrence, Esq.
Alvarado & Associates LLP
1 MacArthur Place, Suite 210
Santa Ana, California 92707
714 327-4400
714 327-4499 fax
slawrence@alvaradoca.com

NOTICE: CONFIDENTIAL AND PRIVILEGED INFORMATION - This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message. IRS Circular 230 Disclosure: To insure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# Exhibit II

# Getting Attached

## *When do allonges meet the requirements of the New York UCC?*

**BY LAWRENCE SAFRAN
AND JOSHUA STEIN**

**W**HENEVER a lender transfers or pledges a loan, counsel will remember from law school that the assignor must "indorse"[1] the promissory note to the assignee. Traditionally, indorsements appeared on the same piece of paper as the note. In today's practice, though, an indorsement often appears on a separate page, an "allonge," thrown into a folder with the promissory note but not physically attached to it. At best, someone might attach the allonge to the note with a paper clip.

Though prevalent, these practices do not meet the technical requirements of the New York Uniform Commercial Code to make the transferee of a promissory note its "holder." The potential result: unnecessary and totally avoidable legal issues if the purchaser or pledgee ever needs to establish it holds the note. For example, in a foreclosure, these imperfections might let the borrower defeat a motion for summary judgment by claiming the plaintiff doesn't validly hold the loan.

The problem arises from a careful reading of the technical requirements of the UCC as in effect in New York (New York UCC).[2] New York is one of only two states that still use the antiquated 1951 version of UCC Article 3.[3]

### The 'No-Space Test'

Under any UCC, if a transferee (whether buyer or secured party) wants to become a "holder"[4] of a negotiable instrument[5]—or, better, a "holder in due course"[6]—the transferor must first duly

---

**Lawrence Safran** *and* **Joshua Stein** *are both finance partners of Latham & Watkins, resident in the New York office.*

---

"negotiate" the instrument to the new holder. Negotiation of a negotiable[7] instrument requires delivery of the instrument to the holder with any necessary indorsement.[8] Being a holder (even "in due course") of an instrument is not necessarily the same as owning it, though some courts do not grasp the distinction.[9]

An indorsement on the front or back of an instrument will unquestionably meet the test for "negotiation." A separate piece of paper—today's industry standard, the "allonge"—raises legal issues that impair its effectiveness as a valid indorsement.

First, ancient principles of commercial law, possibly still good law in New York, prohibit use of any additional piece of paper for an indorsement as long as enough space remains to write the indorsement somewhere on the instrument itself (the "No-Space Test").

Second, even when the law allows a separate indorsement, the New York UCC literally requires an allonge to be "firmly affixed" to the instrument, a requirement that today's practice generally flunks.

Historically, the law disfavored use of an allonge to indorse an instrument. The majority view under all of the "law merchant,"[10] the Uniform Negotiable Instruments Law (NIL),[11] and the common law applied the No-Space Test.[12]

An overwhelming majority of courts in other states that have expressly considered this issue have repeatedly interpreted the 1951 version of UCC §3-202 to carry forward the No-Space Test.[13] On the other hand, quite a few cases have allowed a separate allonge under these circumstances.[14] Only a few of these cases expressly considered whether a particular instrument still had room for an indorsement.[15] These cases generally upheld an allonge without discussing the No-Space Test.

No New York case expressly decides whether the New York UCC includes a No-Space Test. A few New York cases on allonges,[16] and a few from out of state applying the 1951 UCC, do

not consider whether the instrument still had enough space for an indorsement.

The Official Text of Revised Article 3 does not directly address a No-Space Test. But Official Comment 1 to Revised Section 3-204 says: "An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."

If New York enacted the Revised UCC, any concern about a No-Space Test would diminish to the vanishing point. But New York, along with only South Carolina, hasn't done that. Accordingly, the No-Space Test remains at least a lingering concern in New York. And if lenders want to identify and mitigate every possible legal risk in their documents—as they do—they should assume, conservatively, that New York has a No-Space Test.[17]

If New York law does not have a No-Space Test, or if a particular transaction has satisfied the test, counsel must then ask two more questions before using an allonge. Must the parties physically attach the allonge to the instrument being indorsed? If so, what does "physical attachment" require?

### Physical Attachment

New York UCC §3-202(2) states: "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." This requirement tightened the NIL's previous requirement that the indorsement "be written on the instrument itself or upon a paper attached thereto."

The change was deliberate, apparently designed to assure the indorsement would travel with the instrument. This, it was thought, would "protect subsequent purchasers from the risk that the present holder or a previous holder has negotiated the instrument to someone outside the apparent chain of title through a separate document."[18]

Courts disagree on how an allonge must be physically attached to an instrument. Numerous cases have rejected indorsements on separate sheets of paper loosely inserted in a folder with the instrument, not physically attached in any way.[19] Therefore, today's common practice—including the allonge in the closing set without attaching it to the note—simply asks for trouble. An official comment to the New York UCC expressly rejects use of a paper clip, probably the technique most commonly used when people bother to attach the allonge at all.[20]

A staple seems to suffice as an attachment technique. Although the official comments to the UCC neither approve nor reject staples, a draft of the 1951 version of UCC Article 3 did include this comment: "The indorsement must be written on the instrument itself or an allonge, which, as defined in Section _____, is a strip of paper so firmly pasted, stapled or otherwise affixed to the instrument as to become part of it."[21]

Consistent with this view, the Colorado Supreme Court concluded that a stapled allonge was "firmly affixed" so as to "become a part" of the instrument, as UCC §3-202(2) requires of an allonge. In the court's words: "stapling is the modern equivalent of gluing or pasting."[22] The Texas Supreme Court agrees.[23]

Commentators cite many cases for the proposition that staples will not suffice. A closer examination reveals, though, that each such case was decided on other grounds. For example, in *Tallahassee Bank & Trust Co. v. Raines*,[24] a Georgia appellate court rejected the use of a stapled allonge, but did so based on the No-Space Test.[25] Although an allonge happens to have been stapled in this and many similar cases, the outcome depended on failure to satisfy the No-Space Test, not the method of attachment.

*Crossland Sav. Bank FSB v. Constant*[26] is also often cited for a "no staples" rule. There, though, the indorsements were not stapled to the instruments themselves, but instead to the back of another document in a group of documents that included the notes.

Taking into account the UCC and the case law, a loan purchaser can probably satisfy the "firmly affixed" requirement by stapling an allonge to an instrument. Neither glue, nor sealing wax, nor red ribbon seems necessary. Therefore, if a loan purchaser has satisfied, or decided not to worry about, the No-Space Test, the loan purchaser should bring a stapler to the closing, and staple each allonge to the note being indorsed.

But why bother? Couldn't the loan purchaser throw the unstapled allonge in the closing file and then staple it to the note later, if the purchaser ever needs to prove it is a "holder"? Though this approach seems practical and reasonable, it hardly conforms to the level of perfection, care, and risk mitigation typical in commercial real estate financing.

In all likelihood, if and when the loan purchaser needs to enforce the note, no one will think of stapling the allonge (if it can still be found) to the note. Even if someone finds the allonge and remembers, the practice might give the borrower a factual issue and hence a possible defense. A loan purchaser should "do it right" and staple the allonge at closing.

More generally, loan originators may wish to revert to the earlier practice of preprinting an endorsement in blank after the signature block of every promissory note, to simplify future indorsements and prevent mistakes.

---

*Today's common practice—including the allonge in the closing set without attaching it to the note—simply asks for trouble. An official comment to the New York UCC expressly rejects use of a paper clip, probably the technique most commonly used when people bother to attach the allonge at all. A staple seems to suffice as an attachment technique.*

---

•••••••••••••● ● ●••••••●••••••••

1. Both the New York UCC and Revised Article 3, as defined below, say "indorse" rather than "endorse." So will this article.
2. This article considers only the New York UCC (1951 version) unless otherwise stated.
3. The other is South Carolina. All other jurisdictions have enacted the 1990 version (Revised Article 3). Some have even adopted the 2002 amendments. Revised Article 3 eliminates most concerns this article raises.
4. New York UCC §1-201(20) defines "holder" as someone who possesses an instrument "drawn, issued or indorsed to him or his order or to bearer or in blank." By becoming a holder, an assignee may enforce payment, shifting the burden to the maker to establish any defense, and prevents the maker from discharging the note by paying a previous holder. See New York UCC §§3-301, 307(2), and 603(1).
5. See New York UCC §3-104 (requirements for a writing to constitute a negotiable instrument).
6. A "holder in due course" has better rights than a mere "holder," taking free of anyone else's claims to the note and many defenses the maker might otherwise assert. New York UCC §3-305. A holder in due course may still face a few defenses, not relevant here. Conversely, if a loan purchaser doesn't become a "holder" at all, the purchaser may encounter serious difficulties in enforcing the loan.
7. New York UCC §3-102(1)(e) defines "instrument" as a negotiable instrument. See also Revised UCC §3-102(a) ("This Article applies to negotiable instruments."). Courts often treat UCC Article 3 as a codification of the common law, applying it to all notes without regard to negotiability.
8. New York UCC §3-202(1). Instruments payable to bearer do not need indorsements, just delivery. Id.
9. *LaSalle Nat'l Bank Ass'n v. Lamy*, 12 Misc. 3d 1191A (2006), illustrates the distinction. There, the assignee took an assignment of the note without at the same time receiving an indorsement from the proper party. The assignee later did receive an allonge from the proper party, but did not attach it to the note. The court correctly held that this allonge was not an "indorsement" under New York UCC §3-202(2). Hence, the court decided, the assignor still owned the note and the assignee could not obtain a default judgment on the note. This and similar cases, see, e.g., *Slutsky v. Blooming Grove Inn, Inc.*, 542 N.Y.S.2d 721 (1989), improperly ignore the "shelter" principle of New York UCC §3-201(1). True principle states that any transferee of an instrument—even if not a "holder"—generally receives whatever rights the transferor had in the instrument (assuming no illegality, fraud, or other wrongful conduct by the transferee). A transferee that is not a holder can still be the owner of a note and entitled to enforce it, but cannot claim the same presumption of ownership as a "holder," and may find it more difficult to prove its rights. See New York UCC §3-201, Official Comment 8. See also *Giorsetti National Bank v.*

*Bingham*, 118 N.Y. 349, 355 (1890) ("When…an instrument is transferred, but without indorsement…[t]he assignee acquires all the title of the assignor, and may maintain an action thereon in his own name…").
10. The law merchant has been described as "a system of law that does not rest exclusively on the institutions and local customs of any particular country, but consists of certain principles of equity and usages of trade which general convenience and a common sense of justice have established to regulate the dealing of merchants and mariners in all the commercial countries of the civilized world." *Bank of Conway v. Stary*, 51 N.D. 399 (1924).
11. The National Conference of Commissioners on Uniform State Laws promulgated NIL in 1896. By 1924, every state had enacted it. See 2 F. Hart & W. Willier, Commercial Paper under the Uniform Commercial Code §1.06, at 1-25 to -26 (1988). UCC Article 3 superseded NIL.
12. See generally Annot., Indorsement of Negotiable Instruments by Writing Not on Instrument Itself, 19 A.L.R.3d 1297, 1301-1304 (1968) and Annot., Indorsement of Bill or Note by Writing Not on Instrument Itself, 56 A.L.R. 921, 924-926 (1928). A few states limited allonges by statute. For example, California Civil Code §3109, adopted in 1872, declared until California adopted NIL: "One who agrees to indorse a negotiable instrument is bound to write his signature upon the back of the instrument, if there is sufficient space thereon for that purpose." The *Pribus* case cited in the next footnote concluded, though, that California's No-Space Test survived both NIL and the 1951 version of UCC Article 3.
13. *Pribus v. Bush*, 118 Cal.App.3d 1003 (1981); *Shepherd Mall St. Bank v. Johnson*, 603 P.2d 1115, 1118 (Okla. 1979); *Tallahassee Bank & Trust Company v. Raines*, 187 S.E.2d 320, 321 (Ga. App. 1972); James Talcott, Inc. v. Fred Ratowsky Assoc., Inc., 38 Pa. D. & C.2d 624, 2 U.C.C. Rep. Serv. 1134, 1137 (1965).
14. The annotations cited in footnote 13 identify many such cases.
15. *Crosby v. Roub*, 16 Wis. 616 (1863); *Continental Securit. Co. v. Main St. Pharmacy*, 174 N.C. 655 (1917).
16. *Cadle v. Nickelson*, 1996 U.S. Dist. LEXIS 18655 (1996); *LaSalle Bank Nat'l Ass'n v. Lamy*, 12 Misc. 3d 1191A (2006); *Philip Irwin Aaron, P.C. v. Mattikow*, 2002 U.S. Dist. LEXIS 26281. In contrast, an ancient New York case addressed allonges in considering a guarantee that looked like an allonge. The assignee argued that the guarantee was just like an indorsement, hence should travel with the note. The Appellate Court (the former Supreme Court of Judicature) reversed the lower court and held that the guarantee did not run with the note. In dicta, the appellate court quoted approvingly this language on indorsements from a then-current treatise: "If there be not room on the bill, others may be added on an annexed paper called an allonge." *Watson's Executors v. McLaren*, 19 Wend. 557; 1838 N.Y. LEXIS 154 (1838), citing Chit., Bills, Am. Ed. Of 1836 at 326. (Italics added.)
17. NIL §31. Revised Article 3—not the law in New York—has returned to a standard like the old NIL, stating: "a paper affixed to the instrument is a part of the instrument." Revised UCC §3-204.
18. *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163 at 165 (3d Cir. 1988).
19. Id.; Big Builders, Inc. v. Israel, 709 A.2d 74 (D.C. 1988); *Town of Freeport v. Ring*, 1999 Me. 48.
20. Subsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation." New York UCC §3-202, Official Comment 2.
21. ALI, Comments & Notes to Tentative Draft No. 1—Article III 114 (1946), reprinted in 2 Elizabeth Slusser Kelly, Uniform Commercial Code Drafts 311, 424 (1984).
22. *Lamson v. Commercial Cred. Corp.*, 187 Colo. 382 (1975). Stapling hardly achieves the goal of preventing a noteholder from fraudulently "hiding" an indorsement of a note still in his possession, as he could presumably find a staple remover. A couple of vestigial staple holes would hardly place a third party on notice of the fraudulently hidden indorsement.
23. *Southwestern Resolution Corp. v. Watson*, 964 S.W.2d 262 (1997). Though the case applied the stricter 1951 UCC, Texas' enactment of Revised Article 3 with its looser "affixed" requirement may have influenced the result.
24. 187 S.E.2d 320, 321 (Ga. App. 1972).
25. *Pribus v. Bush*, 118 Cal.App.3d 1003 (1981) (We cannot say the [trial] court abused its discretion in finding that no valid allonge existed where, as here, the purported indorsements were not attached next to the notes themselves but were stapled to the back of another document in a group of documents which included the notes."). The court's decision seemed to be a generally unfavorable view of allonges based on the No-Space Test. Id. at 21.

This article is reprinted with permission from the November 27, 2006 edition of the NEW YORK LAW JOURNAL. © 2006 ALM Properties, Inc. All rights reserved. Further duplication without permission is prohibited. For information, contact ALM Reprint Department at 800-888-8300 x6111 or visit almreprints.com. #070-11-06-0044

# Exhibit III

# CHASE ⬡

**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX 75067

July 9, 2010

Michael Berube
P.O. Box 356
Camel Valley, CA 93924

Re: Loan #:        ******7250

Dear Michael Berube:

This letter is in response to the correspondence we received on May 3, 2010, addressed to Chase Home Finance (Chase), regarding the above-referenced mortgage loan serviced by Chase.

Enclosed please find a copy of the following documents:

        Note
        Security Instrument
        Loan transaction history

The investor of this account is Wells Fargo Bank, N.A. You may contact a representative in our Bankruptcy Department a 1-866-325-4316 for further information regarding the status of this account.

Chase's goal is to provide the highest level of Quality service. If you have any questions, you can contact Chase Customer Care at 1-800-446-8939.

To the extent your original obligation was discharged, or is subject to an automatic stay of Bankruptcy under Title 11 of the United States Code, this Statement is for compliance and / or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

Chase is obligated to report accurate information to the credit bureaus and will continue to do so. Late payments, missed payments, or other defaults on the account may be reflected in your client's credit report. This letter shall not be deemed to be a waiver of any rights or remedies, which are expressly reserved.

*Sincerely,*

*Executive Resolution Group*
*KE*

Enclosures: (3)



**CHASE**

**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX 75067

**May 5, 2010**

**Michael Berube
PO Box 356
Camel Valley, CA 93924**

Re: Loan #:          ******7250

Dear Michael Berube:

We are writing in response to your correspondence dated March 19, 2010, addressed to the Chase Home Finance, LLC, regarding your Qualified Written Request (QWR) for the above-mentioned mortgage. Your letter was forwarded to our office on May 3, 2010, for review.

We are investigating your issues and will work to provide you with a complete and accurate response. Chase appreciates your patience in this matter.

Chase's goal is to provide the highest level of quality service. In the interim period, you may contact our Customer Care unit at (800) 848-9136.

Sincerely,

Home Lending Executive Office/LYK

1  Michael R. Berube, Pro Se
   P.O. Box 356
2  Carmel Valley, CA  93924
   michaelberube@yahoo.com
3
   Tel.  (831) 392-7975
4

5

6

7            UNITED STATES BANKRUPTCY COURT

8      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

9

10

11

12 In re:                              Case No.: 09-54715-ASW-11
                                       Chapter 11
13 MICHAEL R. BERUBE,                  DECLARATION SUPPORTING
                                       OBJECTION TO CLAIM
14   Debtor.

15                                     Date:
                                       Time:
16                                     Place:    U.S. Bankruptcy Court
                                                 Courtroom 3020
17                                               280 S. 1st Street
                                                 San Jose, CA
18 ─────────────────────────────

19    DECLARATION SUPPORTING DEBTOR'S OBJECTION TO CLAIM NUMBER 1

20       THE AMENDED CLAIM OF CHASE HOME FINANCE, LLC,

21      AS SERVICING AGENT TO US BANK, NATIONAL ASSOCIATION

22          AS TRUSTEE FOR JPM-ALT 2007-A2

23

24        I, MICHAEL R. BERUBE, declare that if called as a witness, I could testify competently

25 to the truth of the following:

26

27        I have personally reviewed documents referenced in the Objection to Claim including

28 1.          The copies of the note and deed of trust supplied to me by Attorneys for Chase;

| | |
|---|---|
| 1 | **2.**      Copies of the Trust Deed Assignments and Note Allonge supplied by Attorneys |
| 2 | for Chase; |
| 3 | **3.**      The "PACER" version of the docket in the Alliance Bancorp bankruptcy case |
| 4 | filed in Delaware; |
| 5 | **4.**      Monterey County Recorder Office records relative to the subject property located |
| 6 | at 122 Carmel Riviera Drive, Carmel, California; |
| 7 | **5.**      The Pooling and Servicing Agreement found on the SEC website, the citation to |
| 8 | which was referenced to me by Attorneys for Chase; |
| 9 | **6.**      The Deposition of JP Morgan Chase Bank NA assistant vice president Angela |
| 10 | Nolan taken in Monroe, Louisiana; |
| 11 | **7.**      Chase Home Finance response to my Qualified Written Request. |
| 12 | |
| 13 | I believe that the factual assertions concerning the above referenced documents as made |
| 14 | in the accompanying Objection to Claim are true and correct to the best of my knowledge. |
| 15 | The foregoing is executed under penalty of perjury this February 15, 2011 in Monterey |
| 16 | County California. |
| 17 | |
| 18 | February 15, 2011                    _____ |
| 19 | Michael R. Berube |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## CERTIFICATION OF SERVICE

I, Henry Li, the undersigned, whose address appears below, certify:

That I am over the age of eighteen years and not a party to this bankruptcy case. My business address is:  123 E. San Carlos Street, San Jose, CA 95112

That on February 16, 2011, I caused to be served the debtor's **OBJECTION TO CLAIM** and **DECLARATION SUPPORTING OBJECTION TO CLAIM** by sending same via U.S. Mail first class postage prepaid addressed to:

**John M. Sorich**

**ALVARADO & ASSOCIATES, LLP**

**1 Mac Arthur Place, Suite 210**

**Santa Ana, CA  92707**


**U.S. Trustee**

**280 S. 1st Street**

**San Jose, CA  95113**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this certification was executed on February 16, 2011 at San Jose, California.

Henry Li